DOUCET, Judge.
Plaintiff-appellant brought the instant action against M & M Properties (the owner of the apartment complex where plaintiff resides) and Ruby Delahoussaye (the manager of the apartment complex) for physical injuries she allegedly sustained due to an electrical shock from a stove located in her apartment.
This matter was tried by jury and the jury assigned 80% fault to defendants and 20% fault to plaintiff. The jury also found that plaintiff sustained $1,800.00 in special damages and $1,000 in general damages. The jury’s findings were made the judgment of the District Court.
Plaintiff appeals urging two assignments of error:
(1) “The jury erred in finding that plaintiff was negligent in any manner much less twenty (20%) percent negligent.”
(2) “The jury abused its discretion in awarding plaintiff only $1,000 for her general damages less twenty (20%) percent on its finding of comparative negligence.”
Defendants answered the appeal urging that “The District Court’s findings of damages and assignment of 80% fault to ap-pearers are erroneous, and that such findings of fault and damages should be reversed by this Honorable Court on this appeal.”
We first address the question of fault. Plaintiff, on appeal, and defendant, by way of answering the appeal, each urge that they are free from legal fault.
Plaintiff, a resident of the apartment in question for nearly eight (8) years, com *189 plained to the apartment manager, Mrs. Ruby Delahoussaye, that one of her stove’s rear burners was not working. Mrs. Dela-houssaye filled out a work order and sent A.J. Howard, the apartment’s maintenance man, to plaintiff’s apartment to repair, the stove. When plaintiff reported the problem to Mrs. Delahoussaye, she did not complain that the stove was shocking her. Moreover, Mrs. Delahoussaye was the apartment manager from 1978 until 1986 and never once received a complaint from plaintiff that her stove shocked, except for the single report after the incident which forms the basis to this lawsuit.
Mr. Howard, the maintenance man, testified that he received the work order regarding plaintiff’s stove, went to her apartment, put a new fixture on the back burner, and left. Mr. Howard testified that when he left the apartment, the burner was heating properly. Mr. Howard also testified that he checked the stove by placing his hands on top of the stove top and its elements, and received no electrical shock.
On December 16, 1984, plaintiff was allegedly shocked by the back burner on her stove which was fixed by Mr. Howard two months earlier. In connection with this shock, plaintiff was admitted into the Rap-ides General Hospital and was seen by Dr. Charles Joiner and Dr. Wayne Watkins.
Plaintiff called Mrs. Delahoussaye from the hospital and told her that she had received an electrical shock from the stove. Mrs. Delahoussaye, in turn, called Sears and requested that a service technician check the stove.
Sears sent Mr. Roland Prescott, a service technician to plaintiff’s apartment on December 26, 1984. Mr. Prescott replaced what is often referred to as an “open switch” or “infinite switch” on the stove. The “open switch” controls the flow of electricity to the burner, and if the switch is broken, the burner will not operate.
Mr. Prescott testified that this was the only service call made by Sears on this stove. Moreover, Mr. A.J. Howard testified that he never returned to plaintiff’s apartment to check the stove after the Sears service call was made. Plaintiff testified that after the stove was repaired by Mr. Prescott, the Sears service technician, she had no more trouble with it. Plaintiff urges that defendants’ failure to call the Sears service technician at the outset constitutes negligence. We disagree.
Mr. Howard Meyers was qualified by the trial judge as an expert in the field of professional engineering. Mr. Meyers examined the stove in question after the accident and after the Sears service call. As previously stated, plaintiff testified that after the Sears service call, she never had any more problems with the stove. Thus, it is safe to assume that the stove was in the same condition as it was when the Sears service technician left it. Mr. Meyers removed the burners from the stove, raised the stove top and examined the wiring and receptacles underneath the stove top. Mr. Meyers received no electrical shock. Mr. Meyers added that it is impossible to get shocked by the heating element (burner) because it operates by resistance heating and does not carry any electrical current.
An electrical element identical to the one which plaintiff alleges to have shocked her was introduced into evidence and examined by the members of the jury. Mr. Meyers explained to the jury that only the two prongs extending outward from the heating element are current conducting and that the remaining portion of the heating element (which allegedly was being handled by plaintiff when she was shocked) does not conduct electricity. Plaintiff urges that the burner produced at trial was not the same type that shocked her, stating that new burners were installed in plaintiff’s apartment after the accident. We disagree. The record is devoid of any evidence demonstrating any change in the stove except for the repair work performed by Mr. Howard and Mr. Prescott. Neither of the two men changed the burners. Moreover, Mr. Meyers testified that the burner introduced into evidence and inspected by the jury was identical to the burner on plaintiff’s stove.
Mr. Meyers further testified that if there are shorts in a stove, you expect to find *190 evidence of electrical arcing that causes the melting of wire. Mr. Meyers found no evidence of arcing or melted wire, thus, on this basis, he concluded that there was no shorted condition in the stove. Other evidence that there were no shorts in the stove is that Mr. Meyers found that the stove was properly grounded. This fact is significant because if a short ever occurred, it would cause the breaker to be tripped.
Mr. Meyers opined that the only possible way in which anyone could sustain an electrical shock from this stove was by sticking their finger into the socket in which the heating element is plugged.
Mr. Meyers also confirmed Mr. Prescott’s testimony that the changing of an “open switch” would not have corrected any condition which might have caused electric shock to someone handling an electrical burner. It was testified to by both Mr. Prescott and Mr. Meyers that before the “open switch” was changed, there was no electricity flowing to the receptacle into which the rear element is plugged. The changing of the “open switch” only allowed electricity to flow to the receptacle.
Negligence is conduct which falls below the standard of care established by law for the protection of others against unreasonable risk of harm. It is a departure from the conduct expected of a reasonably prudent man under like circumstances. Pence v. Ketchum, 326 So.2d 831 (La.1976). In the instant situation, defendants received notice that plaintiff’s stove was not working. Defendants sent out the maintenance man to correct the problem. The maintenance man returned the stove to working order and left. Two months later, plaintiff was allegedly shocked while handling the same burner that the maintenance man worked on. After plaintiff reported the incident to defendants, a Sears service technician was called to check the stove. We fail to see how using the maintenance man instead of a Sears technician at the outset constitutes negligence. This is especially true in light of the fact that it was established at trial that the Sears service technician only changed the “open switch. As previously stated, the changing of the “open switch” would not have corrected any condition which might have caused electric shock to someone handling an electrical burner. Assuming arguendo that plaintiff did receive an electrical shock, we find that it was due to her own carelessness or misuse of the stove.
Based on the foregoing, we find that plaintiff failed to prove any negligence on the part of defendants which was a proximate cause of her alleged accident. As such, we conclude that the lower court was manifestly erroneous or clearly wrong in its assignment of 80% fault to defendants.
Having found defendants to be free from legal fault, it is unnecessary to address the issue of damages.
Accordingly, for the foregoing reasons, we reverse the judgment of the district court attributing 80% fault to defendants, and dismiss plaintiff’s action at her cost.
REVERSED AND DISMISSED.